56 Cal.Rptr.3d 56 (2007)
148 Cal.App.4th 473
The PEOPLE, Plaintiff and Respondent,
v.
Avelino Ceja VILLA, Defendant and Appellant.
No. A111891.
Court of Appeal of California, First District, Division Three.
March 9, 2007.
*58 Rodney Richard Jones, under appointment by the Court of Appeal, for Appellant.
Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Stan Helfman, Supervising Deputy Attorney General, Christopher J. Wei, Deputy Attorney General, for Respondent.
*57 SIGGINS, J.
Avelino Ceja Villa appeals from an order denying his petition for a writ of error coram nobis. In his petition, Villa sought to vacate a judgment resulting from a guilty plea entered in 1989, claiming he received incorrect advice from his attorney regarding the immigration consequences of his guilty plea. He also contended his plea was entered in violation of a treaty requiring a foreign national to be advised of the right to contact his or her country's consulate upon being arrested. Villa's California sentence has expired and he is no longer in the physical custody of California authorities as a result of his 1989 conviction, *59 which conviction allegedly serves as the sole basis for federal proceedings instituted in 2005 to deport Villa, a Mexican citizen. On appeal, Villa argues that the trial court abused its discretion by summarily denying his petition.
A claim of ineffective assistance of counsel is not cognizable on coram nobis. Moreover, even though we recognize Villa's ability to pursue his ineffective assistance claim in a petition for a writ of habeas corpus, Villa does not adequately allege a basis for habeas corpus relief. He does not allege that he is in custody or restrained of his liberty solely on account of the California conviction. Accordingly, we affirm.

Factual and Procedural Background
On June 6, 1989, Villa pled guilty to one count of possession of cocaine for sale (Health & Saf.Code, § 11351). The trial court suspended imposition of Villa's sentence and placed him on three years' probation. His term of probation has long since expired.
In August 2005, the United States Bureau of Immigration and Customs Enforcement (ICE)[1] commenced removal proceedings under the Immigration and Nationality Act (INA) based on Villa's 1989 conviction, which qualifies as an aggravated felony under the INA.[2] (See 8 U.S.C. §§ 1101(a)(43)(B), 1229a.) The record contains no indication of what prompted immigration authorities to initiate the removal proceedings. On September 26, 2005, while he was in a county detention facility in Alabama,[3] Villa filed a pro se petition for a "writ of coram-nobis and/or motion to vacate judgment of conviction" in the Alameda County Superior Court. The petition sought to vacate the 1989 judgment of conviction based in part on the allegation that Villa received ineffective assistance of counsel concerning the immigration consequences of his plea. Villa also alleged that the judgment was entered in violation of the Multilateral Vienna Convention on Consular Relations and Optional Protocol on Disputes of April 24, 1963 (21 U.S.T. 77, T.I.A.S. No. 6820) (the Vienna Convention). In particular, he claimed he was not informed of his right under the Vienna Convention to contact the Mexican Consulate after his arrest.[4] In an affidavit supporting the petition, Villa indicated that his trial attorney advised him he would not be deported due to the non-custodial nature of his sentence. His defense counsel also purportedly told Villa that proceeding to trial would mean spending extra weeks or months in jail. Out of concern for his family and work obligations, Villa accepted the plea bargain. Villa stated in his affidavit that he would have either sought to negotiate a plea preserving his immigration status or taken *60 the matter to trial if he had been properly informed of the immigration consequences of his plea.
The trial court summarily denied Villa's, petition as untimely. The court further stated in its denial order that even if the petition were timely or otherwise exempt from timeliness requirements, the "moving papers submitted fail to state a prima facie case for relief either for writ of coram nobis or motion to vacate." The court pointed out that Villa was properly advised of the immigration consequences of his plea by the court at the time of his plea. It also stated that Villa had submitted nothing demonstrating ineffective assistance of counsel, finding that the case against Villa was "extremely strong, his activity committed in sight of law enforcement." The trial court concluded that Villa failed to show he was prejudiced by his plea. Villa filed a timely notice of appeal.

DISCUSSION
"A trial court's denial of a coram nobis petition is an appealable order, unless the coram nobis petition failed to state a prima facie case for relief, or the petition raised issues that were, or could have been, raised in other proceedings." (People v. Dubon (2001) 90 Cal.App.4th 944, 950, 108 Cal.Rptr.2d 914.) "We review a trial court's denial of a petition for writ of error coram nobis for abuse of discretion." (Id. at p. 951, 108 Cal.Rptr.2d 914.)

1. Claims Under the Vienna Convention
At the outset, we can easily dismiss Villa's contention the trial court erred in rejecting his claim that his plea was entered in violation of rights afforded him under the Vienna Convention. First, the Vienna Convention does not create a personal right of constitutional dimension. (Murphy v. Netherland (4th Cir.1997) 116 F.3d 97, 99-100.) Hence, the acceptance of Villa's guilty plea without proper advice under the Vienna Convention does not invalidate the judgment. Second, to the extent Penal Code section 834c, subdivision (a)[5] requires a foreign national to be advised of the right to contact his or her country's consulate, the advice is to be given by the arresting officer.[6] There is no evidence in the record that the arresting officer failed to comply with this requirement. Finally, the issue may not be raised for the first time by a petition for a postjudgment writ but must instead be raised on direct appeal after the conviction. (Breard v. Greene (1998) 523 U.S. 371, 375-376, 118 S.Ct. 1352, 140 L.Ed.2d 529.) In Breard the United States Supreme Court noted that "[e]ven were [the] Vienna Convention claim properly raised and proved, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the [outcome of a defendant's criminal case]." (Id. at p. 377, 118 S.Ct. 1352.) Villa has failed to make any such showing in this case. Because Villa's claim premised on the Vienna Convention does *61 not state a prima facie case for relief and must have been raised, if at all, on direct appeal, coram nobis does not lie to correct the purported error.

2. The Unavailability of Coram Nobis
Villa disputes the trial court's ruling concerning his ineffective assistance of counsel claim, arguing that his petition was timely and stated a prima facie case for relief justifying an evidentiary hearing. The Attorney General contends there was no error because Villa's ineffective assistance claim is not cognizable in a coram nobis petition. Before we may consider the merits of Villa's claim, we must address the Attorney General's contention.
"In this state coram nobis is a limited remedy of narrow scope which is available (where no other remedy exists) to secure relief from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court." (People v. Sharp (1958) 157 Cal.App.2d 205, 207, 320 P.2d 589.) "A writ of error coram nobis may be granted when three requirements are met: (1) the petitioner has shown that some fact existed which, without fault of his own, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of judgment; (2) the petitioner has shown that the newly discovered evidence does not go to the merits of the issues tried; and (3) the petitioner has shown that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ." (People v. Castaneda (1995) 37 Cal.App.4th 1612, 1618-1619, 44 Cal.Rptr.2d 666.)
"The writ lies to correct only errors of fact as distinguished from errors of law."[7](People v. Sharp, supra, 157 Cal.App.2d at p. 207, 320 P.2d 589; see also People v. Blalock (1960) 53 Cal.2d 798, 801, 3 Cal.Rptr. 137, 349 P.2d 953.) Here, the error was the allegedly erroneous advice by defense counsel about the immigration consequences of Villa's guilty plea. "`"A mistake of fact" is where a person understands the facts to be other than they are; whereas a "mistake of law" is where a person knows the facts as they really are, but has a mistaken belief as to the legal consequences of those facts.'" (People v. LaMarr (1942) 20 Cal.2d 705, 710, 128 P.2d 345.) A mistaken belief about the legal consequences of Villa's immigration status was a mistake of law, not a mistake of fact, and does not meet the criteria for review by coram nobis.
Furthermore, "[a]s a general proposition, review of constitutional issues is outside the ambit of coram nobis." (Prickett, The Writ of Error Coram Nobis in California, 30 Santa Clara L.Rev. 1, 25.) Thus, "lack of counsel or effective aid of counsel are not properly raised by a petition for a writ of error coram nobis" (People v. Sharp, supra, 157 Cal.App.2d at p. 208, 320 P.2d 589; see also People v. Howard (1965) 62 Cal.2d 237, 238, 42 Cal. Rptr. 7, 397 P.2d 999 [petition that included ineffective assistance claim did not meet requirements for coram, nobis ].) In People v. Soriano (1987) 194 Cal.App.3d 1470, 1477, 240 Cal.Rptr. 328, the court held that a claim of ineffective assistance of counsel based on improper advice regarding the immigration consequences of a plea could not be asserted in a petition for a writ of *62 error coram nobis. "The appropriate means of raising a claim of ineffective assistance of counsel is either by direct appeal or by petition for a writ of habeas corpus." (Ibid.) Indeed, when a coram nobis petition alleges ineffective assistance of counsel as the sole ground for vacating a judgment, an appeal from the trial court's ruling denying the petition may be dismissed as frivolous. (People v. Gallardo (2000) 77 Cal.App.4th 971, 983, 92 Cal. Rptr.2d 161.) Villa's claim is not cognizable in coram nobis.

3. The Availability of Habeas Corpus to Challenge Villa's Detention
In light of California case law establishing that coram nobis will not lie to correct errors of law or to address claims of ineffective assistance of counsel, no further inquiry into Villa's claim would appear to be necessary. However, we will also address Villa's reference to the purportedly "clear principles" set out in In re Azurin (2001) 87 Cal.App.4th 20, 104 Cal. Rptr.2d 284 (Azurin), that coram nobis is an available remedy under the circumstances presented here, and that habeas corpus is not. The "clear principles" to which Villa alludes is a one-sentence footnote at the conclusion of Azurin in which the court explained that its denial of the petitioner's habeas corpus petition under facts similar to those presented here was without prejudice to the filing of a coram nobis petition, citing as support for the statement People v. Wiedersperg (1975) 44 Cal.App.3d 550, 118 Cal.Rptr. 755. (Azurin, supra, at p. 27, fn. 7, 104 Cal.Rptr.2d 284.) Azurin and Wiedersperg do not alter the conclusion that Villa's claims are inappropriate for coram nobis review. But we depart from and disagree with Azurin's holding that a petitioner in the custody of immigration officials solely on account of a California conviction is not in constructive state custody and thus has no state habeas corpus remedy.[8]
Section 1473, subdivision (a) provides: "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint." Over the years, this language has been relied upon to permit writs brought by persons on parole, those free on bail, "those released on their own recognizance, and those under a sentence that has been stayed. (In re Sturm (1974) 11 Cal.3d 258, 265, 113 Cal.Rptr. 361, 521 P.2d 97; In re Petersen (1958) 51 Cal.2d 177,181-182, 331 P.2d 24; In re Smiley (1967) 66 Cal.2d 606, 611-614, 58 Cal.Rptr. 579, 427 P.2d 179; In re Catalano (1981) 29 Cal.3d 1, 8-9, 171 Cal.Rptr. 667, 623 P.2d 228.) Such petitioners are considered to be in constructive custody. "The thrust of these cases is that a person is in custody constructively if he may later lose his liberty and be eventually incarcerated." (In re Wessley W. (1981) 125 Cal.App.3d 240, 246, 181 Cal.Rptr. 401.)
But where a criminal conviction for which a sentence has expired is used to enhance a charged crime or aggravate a future criminal sentence, the effect of the conviction is considered to be a collateral consequence rather than a result of constructive custody. (Maleng v. Cook (1989) 490 U.S. 488, 492, 109 S.Ct. 1923, 104 L.Ed.2d 540.) In a similar way, a petitioner is not in constructive custody and may not challenge the appearance of a conviction on his criminal record by habeas corpus where his sentence or probation has *63 expired. (In re Wessley W., supra, 125 Cal.App.3d at p. 246, 181 Cal.Rptr. 401.) Azurin adds to the category of a conviction's collateral consequences those circumstances where a state court conviction provides the sole basis for confinement in a deportation proceeding. (Azurin, supra, 87 Cal.App.4th at p. 26, 104 Cal.Rptr.2d 284.) But we disagree, because in such cases the petitioner is suffering a present restraint of his liberty solely on account of the earlier criminal conviction.
In Azurin, the petitioner filed a petition for a writ of habeas corpus on the ground that trial counsel had rendered ineffective assistance by failing to advise him that deportation proceedings would likely be initiated as a result of a 1990 guilty plea. (Azurin, supra, 87 Cal.App.4th at p. 22, 104 Cal.Rptr.2d 284.) Although the petitioner's term of parole on his 1990 conviction had long since expired at the time he filed his writ petition, he asserted he was in constructive state custody because he was in the actual or constructive custody of federal authorities on the alleged immigration violation. (Id. at p. 25, 104 Cal. Rptr.2d 284.) The trial court granted the petition but the appellate court reversed. The appellate court "decline[d] to expand the interpretation of the language of section 1473, subdivision (a) so as to reach a conclusion that [petitioner] was in California's 'constructive custody" under the 1990 conviction simply because such conviction formed the basis for federal deportation proceedings including attendant federal custody." (Ibid.) Because the petitioner was not in state custody, the court was unable to comply with the requirements of section 1477, which in general directs that a writ of habeas corpus be directed to the person having custody of the petitioner.[9](Azurin, supra, at p. 24, 104 Cal.Rptr.2d 284.) But in In re Shapiro (1975) 14 Cal.3d 711, 122 Cal.Rptr. 768, 537 P.2d 888, our Supreme Court considered whether a state habeas corpus petition would lie to correct the effect of a California detainer on a petitioner's federal custody. In that case, the court considered the detainer to be a limited type of custody that could be addressed by habeas corpus, and concluded that, while the writ could not be directed to federal officials, it could be directed to state officials who could be ordered to expunge the detainer. (Id at p. 715, 122 Cal.Rptr. 768, 537 P.2d 888.)[10]
We think the situation here is not materially different. Villa may be imprisoned or restrained of his liberty solely as a result of a California conviction. Unlike Maleng and other cases that concern collateral consequences of a conviction, concluding that petitioner is in constructive custody does not extend the availability of habeas corpus to a circumstance where a "petitioner suffers no present restraint from a conviction." (Maleng v. Cook, supra, 490 U.S. at p. 492, 109 S.Ct. 1923.) The conclusion that petitioner is in constructive custody of the state also falls squarely within the language of section 1473, subdivision (a) that provides: "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus..."
Just as in Shapiro, it is not fatal that the writ would be directed to the People rather than the immigration officials *64 who have physical custody of the petitioner. Section 1477 is not an impediment to the court entertaining a petition where, as here, a petitioner is in constructive custody. The import of section 1477 is not to effectuate habeas relief, but is to commence adversarial proceedings. (Durdines v. Superior Court (1999) 76 Cal. App.4th 247, 251, 90 Cal.Rptr.2d 217.) The superior court may proceed as the rules envision by order to show cause instead of issuance of the writ. (In re Lawler (1979) 23 Cal.3d 190, 151 Cal.Rptr. 833, 588 P.2d 1257; Cal. Rules of Court, rule 4.551.) Neither does the petitioner have to be present within the jurisdiction of the court. (In re Pearlmutter (1976) 56 Cal. App.3d 335, 336-337, 128 Cal.Rptr. 450.)
"Inherent in the power to issue the writ of habeas corpus is the power to fashion a remedy for the deprivation of any fundamental right which is cognizable in habeas corpus." (In re Crow (1971) 4 Cal.3d 613, 619-620, fn. 7, 94 Cal.Rptr. 254, 483 P.2d 1206; In re Gutierrez (1997) 51 Cal.App.4th 1704, 1709, 60 Cal.Rptr.2d 332.)' Ineffective assistance of counsel alleges the deprivation of a fundamental right that is cognizable in habeas corpus. (In re Resendiz (2001) 25 Cal.4th 230, 240, 105 Cal.Rptr.2d 431, 19 P.3d 1171; People v. Soriano, supra, 194 Cal.App.3d 1470, 240 Cal.Rptr. 328.) Here, if Villa were able to prove his California conviction should be set aside due to ineffective assistance of counsel, an order expunging the conviction may effectuate his release from detention. (Cf. In re Shapiro, supra, 14 Cal.3d at p. 715, 122 Cal.Rptr. 768, 537 P.2d 888.) "[Affirmative misadvice regarding immigration consequences can in certain circumstances constitute ineffective assistance of counsel." (In re Resendiz, supra, 25 Cal.4th at p. 240, 105 Cal. Rptr.2d 431, 19 P.3d 1171.) The petitioner may therefore prevail on such an ineffective assistance of counsel claim if he can demonstrate he was prejudiced by counsel's deficient performance, notwithstanding the court's section 1016.5 advisement. (Id. at pp. 253-254, 105 Cal.Rptr.2d 431, 19 P.3d 1171.)
But even though we conclude habeas corpus is an available remedy to Villa, his petition does not set forth a prima facie showing that he may be entitled to relief. (Cal. Rules of Court, rule 4.551(c)(1).) Villa does not allege that he is in federal custody solely on account of his earlier California conviction. The petition alleges that Villa was served with a notice to appear by immigration and customs enforcement officials, and his address appears to be a county detention facility in Alabama. But nowhere in his verified pleadings does Villa declare that he "is imprisoned or restrained of his liberty" solely because of the California conviction. So, even construing Villa's petition to be one for a writ of habeas corpus, we deny the petition.[11]

*65 DISPOSITION
The judgment is affirmed.
I concur: Pollak, J.
McGUINESS, P.J., Concurring.
I concur in the judgment. I agree that an ineffective assistance of counsel claim may not be raised by a petition for a writ of error coram nobis. However, I write separately to express my strong disagreement with the dicta in the majority opinion suggesting a California court has jurisdiction to consider a habeas corpus petition challenging a conviction when the sentence imposed for that conviction has fully expired.

1. A Person Cannot Be in Constructive Custody under a Conviction When the Sentence Imposed for that Conviction Has Fully Expired.

The traditional function of habeas corpus was to release a person from actual restraint, and early cases insisted on the requirement of actual physical detention. (6 Witkin, Cal.Criminal Law (3d ed. 2000) Criminal Writs, § 14, p. 533.) Decisional law has expanded the writ's application to persons who are in constructive custody. (In re Wessley W. (1981) 125 Cal.App.3d at 243, 246, 181 Cal.Rptr. 401.) Thus, the writ is available to persons on parole or probation as well as to those released on bail or their own recognizance. (Ibid.) In such cases, the state or its agent continues to exercise control over the petitioner by imposing restrictions on the petitioner's liberty and by threatening to return the petitioner to actual custody upon a violation of those restrictions. These restraints amount to constructive legal custody.
Here, appellant's term of probation expired long before he filed his habeas petition. At present, the State of California places no restrictions on appellant's liberty beyond those constraints applied generally to all persons. There is no possibility that appellant may be returned to the actual custody of the state solely as a consequence of the challenged conviction. Under these circumstances, California exercises no custodial restraint upon appellant.
My colleagues disagree, however, and assert that appellant is in constructive custody of the state because he may be imprisoned or restrained of his liberty by federal immigration officials solely as a result of his expired California conviction. (Maj. opn. at pp. 63-64.) I fail to see how detention by a sovereign other than the State of California, even if premised on an expired California conviction, amounts to constructive custody by this state.
In Maleng v. Cook (1989) 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540, the United States Supreme Court addressed whether habeas lies to collaterally attack a fully expired conviction. The court declared: "We have never held ... that a habeas petitioner may be `in custody" under a conviction when the sentence imposed for that conviction has fully expired at the time his petition is filed." (Id. at p. 491, 109 S.Ct. 1923.) In that case, the petitioner attacked a prior conviction that was being used to enhance a sentence for a new conviction. The sentence imposed for the prior conviction had expired by the *66 time the petitioner sought habeas relief. The court held that the petitioner was not "in custody" under the prior conviction, explaining that "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual `in custody' for the purposes of a habeas attack upon it." (Id. at p. 492, 109 S.Ct. 1923.) This was so even though the petitioner actually received an enhanced sentence because of the prior conviction. (Id. at pp. 492-493, 109 S.Ct. 1923.) Thus, the court explicitly rejected the claim that a habeas petitioner is in custody on an expired conviction simply because reversal of that conviction would advance the date he may be released from his current confinement. Relying on Maleng v. Cook, other courts have held that a person detained by immigration officials on account of an expired state conviction is not "in custody" on the expired conviction. (See Ajadi v. Commissioner of Correction (2006) 280 Conn. 514, 536-543 [911 A.2d 712, 728-732]; Resendiz v. Kovensky (9th Cir.2005) 416 F.Sd 952, 956.) Indeed, I am aware of no reported decision in which a court has held otherwise.
In re Shapiro (1975) 14 Cal.3d 711, 122 Cal.Rptr. 768, 537 P.2d 888, upon which the majority relies, does not alter the conclusion that appellant is no longer in the constructive custody of this state. There, the petitioner was on parole in California when he committed a federal drug crime. While the petitioner was serving time at a federal penitentiary, California suspended parole and issued an arrest warrant for the petitioner's return to the state for parole revocation proceedings. Federal officials treated the warrant as a detainer. (Id at p. 714, 122 Cal.Rptr. 768, 537 P.2d 888.) Our Supreme Court held that the detainer "acts as a limited type of `custody' to which habeas corpus may be directed." (Id. at p. 715, fn. 3, 122 Cal.Rptr. 768, 537 P.2d 888.) This result is neither surprising nor inconsistent with constructive custody principles. In a case relied upon by the Shapiro court, the United States Supreme Court explained there is no difficulty concluding that a petitioner is "in custody" for purposes of habeas jurisdiction when one sovereign acts as the agent of another in holding the petitioner pursuant to a detainer. (Ibid, citing Braden v. 30th Judicial Circuit Court of Ky. (1973) 410 U.S. 484, 489, fn. 4, 93 S.Ct. 1123, 35 L.Ed.2d 443.) Unlike the situation in Shapiro, here the state exercises no further legal authority or control over appellant. Moreover, federal immigration officials are not acting as agents of the State of California in detaining appellant or in otherwise restraining his liberty. In short, Shapiro does not support the conclusion we have habeas jurisdiction to consider a challenge to a fully expired conviction.

2. An Order to Show Cause, Like a Writ of Habeas Corpus, Must be Served on the Person With Custody of a Habeas Petitioner.
My colleagues conclude it is not fatal that the writ would be directed to the People instead of immigration officials who have actual custody of appellant. They reason that Penal Code section 1477, which requires the writ be directed to the person having custody of the petitioner, presents no impediment here because appellant is purportedly in the state's constructive custody. Plus, they point out that the purpose of Penal Code section 1477 "is not to effectuate habeas relief, but is [instead] to commence adversarial proceedings," a purpose that may be achieved by issuance of an order to show cause in place of a writ of habeas corpus. (Maj.Opn., p. 64.)
There appears to be no dispute that a state court has no power to direct federal immigration officials to comply with a writ *67 of habeas corpus. Nor may the writ properly be directed to the People, who have no authority to deliver "the body" of appellant before a court. (See Pen.Code, § 1477 [writ must command custodian to have body of petitioner brought before court].) Furthermore, I am not convinced that the requirements of Penal Code section 1477 may be so easily avoided by the issuance of an order to show cause.
In In re Hochberg (1970) 2 Cal.3d 870, 873-874, fn. 2, 87 Cal.Rptr. 681, 471 P.2d 1, our Supreme Court explained how it came about that courts issued orders to show cause in lieu of writs of habeas corpus authorized by Penal Code section 1477. Appellate courts are not well equipped to have prisoners brought before them, as Penal Code section 1477 requires. Many issues cognizable on habeas corpus may be resolved without resorting to the archaic habeas practice of having "the body" of the petitioner brought before the court. Thus, the Courts of Appeal developed the practice of "ordering the custodian to show cause why the relief should not be granted. [Citations.]" (In re Hochberg, supra, 2 Cal.3d at p. 874, fn. 2, 87 Cal.Rptr. 681, 471 P.2d 1, italics added.) An order to show cause dispenses with the requirement of having prisoners brought before the court, but it does not dispense with the requirement that the order or writ be served on a person with some capacity either now or in the futureto bring the petitioner before the court. "The order to show cause directs the respondent custodian to serve and file a written return." (Ibid., italics added; see also People v. Romero (1994) 8 Cal.4th 728, 738, 35 Cal. Rptr.2d 270, 883 P.2d 388.)
I do not believe an order to show cause may be issued where the court would otherwise have no power to issue a writ of habeas corpus. When the People possess no authority to bring the body of a petitioner before the court, either now or at some future time, I would argue that a court may not properly direct a writ of habeas corpus or an order to show cause to the People.[1]

3. Habeas Relief is Unavailable in any Event.
Even if I agreed with the habeas analysis advanced by the majority, I would still feel it is unnecessary to address the issue in this case in light of the majority's conclusion that appellant is not entitled to habeas relief. Furthermore, even if appellant were eligible for habeas relief, I question whether he has made out a prima facie case for relief. The majority's analysis effectively invites appellant to file a habeas corpus petition alleging he is in federal custody solely on account of his expired state conviction, (Maj. opn. at p. 64.) I have serious reservations about whether appellant has made a proper showing that, but for his counsel's asserted ineffective assistance, he would have rejected a plea and proceeded to trial. Such a claim must be supported by objective evidence. (In re Resendiz (2001) 25 Cal.4th 230, 253, 105 Cal.Rptr.2d 431, 19 P.3d 1171.) Here, appellant's claim that he had a valid defense to the charges against him is based on his own uncorroborated assertions. I certainly would not *68 want to signal to appellant or to others that one may state a prima facie case for habeas relief from a guilty plea based upon unsubstantiated claims that there existed a factual defense to the charges. My reservations in this regard are amplified by the fact that so much time has passed since the date of appellant's conviction.

CONCLUSION
For the reasons stated above, I do not agree that habeas corpus is a remedy available to appellant, even if he were to plead he is in federal custody solely on account of his expired California conviction. I respectfully part ways with the majority on this issue and agree with In re Azurin (2001) 87 Cal.App.4th 20, 104 Cal. Rptr.2d 284, and the numerous other decisions from around the country holding that habeas corpus jurisdiction does not lie to challenge a conviction when the sentence imposed for that conviction has fully expired. If policy reasons justify the creation of a remedy akin to coram nobis or habeas corpus to address situations such as appellant's, I believe the issue is best left for the Legislature. Nonetheless, in my view, the meaning of "constructive custody" is stretched too far when it encompasses a situation in which the State of California imposes no present restraint on a person's liberty and there is no longer any possibility that California could take actual custody of that person on the basis of a challenged conviction.
NOTES
[1] ICE was formerly known as the United States Immigration and Naturalization Service, or INS. (Abdullah v. Gonzales (1st Cir. 2006) 461 F.3d 92, 93, fn. 1; AH v. Barlow (E.D.Va.2006) 446 F.Supp.2d 604, 608, fn. 6.)
[2] An alien's conviction for an aggravated felony is a ground for deportation. (8 U.S.C. § 1227(a)(2)(A)(iii).)
[3] The record indicates Villa is in county jail in Alabama. It may well be that new criminal charges in Alabama prompted a review of Villa's criminal record and triggered the deportation proceedings. Notably, Villa does not allege he is in custody solely as a result of his California conviction.
[4] In his petition, Villa also alleged that the trial court failed to advise him of the possibility of deportation as required by Penal Code section 1016.5. Because the record discloses that Villa acknowledged the trial court's advisement that he may be deported or have his citizenship denied as a consequence of the conviction, Villa does not seek review of the denial of his petition on this ground.
[5] All further statutory references are to the Penal Code unless otherwise specified.
[6] Section 834c codifies rights afforded under the Vienna Convention. Subdivision (a)(1) of section 834c provides: "In accordance with federal law and the provisions of this section, every peace officer, upon arrest and booking or detention for more than two hours of a known or suspected foreign national, shall advise the foreign national that he or she has a right to communicate with an official from the consulate of his or her country, except as provided in subdivision (d). If the foreign national chooses to exercise that right, the peace officer shall notify the pertinent official in his or her agency or department of the arrest or detention and that the foreign national wants his or her consulate notified."
[7] "The only exception to this rule occurs where the error is jurisdictional." (People v. Ibanez (1999) 76 Cal.App.4th 537, 547, 90 Cal.Rptr.2d 536.)
[8] While we disagree with the holding in Azurin, we agree with its underlying premise that there must be some means for review in cases like this one. We believe it is habeas corpus rather than coram nobis.
[9] Section 1477 provides: "The writ must be directed to the person having custody of or restraining the person on whose behalf the application is made, and must command him to have the body of such person before the Court or Judge before whom the writ is returnable, at a time and place therein specified."
[10] The petitioner in Shapiro was also on suspended parole from California.
[11] There is no reason to speculate here as to whether Villa would be able to prove the ineffective assistance of counsel that he alleges. However, his claim is based on more than "his own uncorroborated assertions," as the concurring opinion of Justice McGuiness suggests. (Cone. opn. at p. 67.) Villa contends that he relied on his attorney's advice that he would not be subject to deportation if, as anticipated, he received a noncustodial sentence. It is possible that Villa's attorney misadvised him on this point because at the time of Villa's conviction in 1989, incarceration was relevant under former title 8 United States Code section 1251, subdivision (a)(4), which authorized deportation of an alien who "is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefore [sic] in a prison or corrective institution, for a year or more ...." (Italics added.) (See Janvier v. United States (2d Cir.1986) 793 F.2d 449, 452.) (The federal law in this respect has subsequently been changed. (See 8 U.S.C. § 1227(a)(2)(A)(i), as amended in the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, § 435(a) (April 24, 1996) 110 Stat. 1214, 1274.) It is entirely plausible that Villa's attorney in 1989 overlooked the fact that a more specific provision, of federal law rendered Villa subject to deportation for conviction of a controlled substance offense regardless of whether the conviction resulted in incarceration. (See former title 8 U.S.C. § 1251(a)(11), now § 1227(a)(2)(B)(i); Brown v. U.S. IMS. (5th Cir.1988) 856 F.2d 728, 729.)
[1] In In re Shapiro, supra, the petitioner was in physical custody of federal authorities, not the State of California. (In re Shapiro, supra, 14 Cal.3d at p. 714, 122 Cal.Rptr. 768, 537 P.2d 888.) Nevertheless, an order to show cause could be directed to the People of the State of California because they had constructive custody of the petitioner as a consequence of the detainer placed on him. Because there was a California warrant for the petitioner's arrest, the People also necessarily had the authority to deliver the body of the petitioner before the court, at least at some future time.