Filed 11/18/15  P. v. Ward CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE, | F069432 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 13CM4942) |
| RANDALL WAYNE WARD, | **OPINION** |
| Defendant and Appellant. | |

**THE COURT**\*

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*　　　Before Levy, Acting P.J., Detjen, J. and Smith, J.

## INTRODUCTION

Defendant and appellant Randall Wayne Ward was charged with multiple offenses arising out of a domestic violence incident. Pursuant to a plea agreement, he pled guilty to one count of infliction of corporal injury on a spouse, in exchange for dismissal of four other counts and referral to the Kings County Collaborative Justice Treatment Court. Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

The facts are taken from the probation report. On December 27, 2013, Hanford police officer Dale Williams was dispatched to a residence on a report of a domestic violence incident. Williams met with the victim, defendant's wife Sandra, who reported defendant began arguing with her, then went into the kitchen and flipped the kitchen table onto its side, while continuing to yell at her. She began taking pictures of defendant's actions with her cell phone. Defendant became extremely agitated and grabbed the cell phone from her hand.

Sandra's son, Steven Williams, heard the commotion and came to investigate. Steven told defendant to "knock it off," at which point defendant became enraged, dropped the cell phone he had grabbed from Sandra, then grabbed Steven with both his hands and began choking him. Sandra attempted to pry defendant's hands off her son, but defendant punched Sandra in the face, knocking her back and stunning her.[1]

Defendant changed his chokehold on Steven, apparently increasing the hold. Steven's girlfriend, Natalie Garcia, heard screaming and yelling and heard Steven state he was having trouble breathing. Garcia pulled out her cell phone and began recording the

---

[1] For clarity and readability we refer to Sandra Ward and Steven Williams by their first names; no disrespect is intended.

2.

incident. Steven managed to overpower defendant and get to his feet; Steven, Sandra, and Garcia left the house and waited for police to arrive.

On February 24, 2014, an information was filed in Kings County charging defendant with violating Penal Code[2] section 273.5, subdivision (a), infliction of corporal injury on a spouse, a felony; section 245, subdivision (a)(4), assault by means of force likely to produce great bodily injury, a felony; section 242, battery, a misdemeanor; section 594, subdivision (a), vandalism, a misdemeanor; and section 591.5, damage to a wireless communication device, a misdemeanor.

On February 25, 2014, the trial court granted defendant's request to represent himself. Defendant was arraigned and pled not guilty to all charges. Stand-by counsel, Stephen Girardot, was appointed to assist defendant. On March 17, 2014, Girardot notified the trial court he was concerned about defendant's competency. The trial court asked a series of questions of defendant to assess his understanding of the proceedings. After the questions from the trial court, defendant asked to speak with Girardot and the two conferred. The trial court stated that "based on your behavior and your addressing the Court today, I don't think that you are incompetent. You may suffer from a mental illness, but that doesn't mean that you're incompetent."

The People indicated that they were offering a plea bargain to defendant. In exchange for a plea to a violation of section 273.5, subdivision (a), the People would agree to a grant of probation and a referral to the mental health court. The trial court informed defendant he had to plead guilty, not no contest, for a referral to the mental health court.

The People also offered that if defendant completed a batterer's treatment program, upon completion of the program, and if defendant remained in compliance with "everything" throughout the 52-week period, the People would reduce the offense to a

_____

[2] References to code sections are to the Penal Code.

3.

misdemeanor. The trial court asked defendant if he understood that his plea would require completion of a batterer's treatment program and compliance with all the terms and conditions of probation, after which the offense would be reduced to a misdemeanor. Defendant indicated he understood.

Girardot informed the trial court that after further consultation with defendant, he was "revamping" his lack of competence evaluation and believed that defendant was in fact competent. The trial court revoked defendant's pro per status and appointed Girardot to represent defendant. The matter was trailed to allow Girardot to confer with defendant.

When the matter was recalled by the trial court, the trial court went over the People's offer and the process for referral to the Collaborative Justice Court, mental health division. The trial court explained defendant's constitutional rights and the consequences of entering a plea; defendant affirmatively stated he understood his rights and the consequences of entering a plea. The trial court found the factual basis for the plea was the preliminary hearing.

Girardot stated that he had had sufficient time to discuss the plea with defendant and had advised defendant of the nature of the charges, possible defenses, and consequences of the plea. The trial court asked defendant if he had any questions, to which defendant responded, "No, your Honor." The trial court accepted defendant's guilty plea to the charge and found the plea was entered freely and voluntarily. The People moved to dismiss all the remaining counts. The other four counts were dismissed.

Defendant was sentenced on May 1, 2014. Imposition of judgment was suspended; defendant was placed on formal probation for three years; and terms and conditions of probation were set. Defendant was ordered to immediately report to the probation office to sign the Collaborative Justice Treatment Court program enrollment papers. Defendant indicated he understood the terms of his probation and Girardot stated he gave a written copy of the terms to defendant.

4.

The trial court admonished defendant that if he violated probation, he would be looking at a prison term. A 10-year criminal protective order was issued for Sandra and a three-year protective order for Steven; defendant was informed of the terms of the protective orders.

Defendant was accepted into the Kings County Collaborative Justice Treatment Court. On May 20, 2014, defendant filed a notice of appeal and requested a certificate of probable cause. The trial court granted the certificate of probable cause on May 22, 2014.

## DISCUSSION

Appellate counsel filed a *Wende* brief on November 13, 2014. That same day, this court issued a letter to defendant, notifying him that a *Wende* brief had been filed on his behalf and providing him an opportunity to submit a supplemental brief. No supplemental brief was filed.

Although no supplemental brief was submitted by defendant, in his request for a certificate of probable cause he alleges that his trial counsel, Girardot, failed to properly advise him and recommended he enter into the plea agreement.

That a defendant may have been persuaded, or was reluctant, to enter into a plea agreement does not establish that the plea was involuntary. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919.) Advice and persuasion from a defendant's own attorney does not vitiate a plea. (*People v. Evans* (1960) 185 Cal.App.2d 331, 334.)

Moreover, defendant affirmatively indicated he understood the consequences of entering a plea and Girardot affirmatively represented that he had advised Ward of the nature of the charges and possible defenses. Defendant represented to the trial court, prior to entering his plea, that he had no further questions before pleading. Although the plea agreement was very favorable to defendant, he appears to have changed his mind; "buyer's remorse," however, is not a sufficient ground for setting aside a plea. (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1143-1144.)

5.

A review of the record does not disclose ineffective assistance of counsel. Any claim of ineffective assistance of counsel should be raised in a petition for writ of habeas corpus. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) After an independent review of the record, we find no reasonably arguable factual or legal issue exists.

## DISPOSITION

The judgment is affirmed.